* * * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Defendant is a duly qualified self-insured, with Gallagher Bassett Services as the servicing agent.
3. An employee-employer relationship existed between the parties at all relevant times.
4. On April 30, 2004, plaintiff suffered an injury by accident when he fell from a ladder at work during the course and scope of his employment with defendant.
5. Defendant accepted the compensability of plaintiff's thoracic and lumbar spine conditions by filing a Form 60 on April 26, 2005. Defendant denies the compensability of plaintiff's cervical spine condition.
6. Plaintiff has an average weekly wage of $743.54, and a resulting compensation rate of $495.72.
7. The following exhibits were admitted into evidence:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Medical Records
 (c) Stipulated Exhibit 3: Employment and Payroll Records
 (d) Stipulated Exhibit 4: Discovery Requests and Responses.
8. The depositions of Betty Riddle, Catherine Duncan, M.D., Cara B. Siegel, M.D., and Timothy B. Garner, M.D., are part of the evidence of record.
9. The issues before the Commission on remand from the Court of Appeals are whether plaintiff was disabled from employment from May 23, 2005 through July 8, 2005; and *Page 3 
what compensation is plaintiff entitled to receive for days missed from work due to the compensable injury by accident.
 * * * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals, and based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the Deputy Commissioner's hearing, plaintiff was 37 years old. He has a G.E.D. and served in the Army National Guard for approximately six years.
2. Plaintiff began working for defendant-employer as a field technician in 2003. As a field technician, plaintiff installed and maintained electronic hardware for security systems at various facilities.
3. On April 30, 2004, plaintiff was working at a mental health facility in Raleigh installing magnetic locks on doors. He was standing on a ladder, working on electrical wiring in the ceiling. Plaintiff's upper body was approximately three feet into the ceiling when the ladder shifted. He fell through the ceiling, his arms caught on the ceiling grids, and he fell eight feet to the floor, landing on his feet. Due to pain, plaintiff left work for the remainder of the day.
4. The following day plaintiff returned to work and showed the bruises on his arms to his supervisor, Jack Bauer. Although plaintiff experienced severe pain in his mid-back, he continued to work after the accident. On May 10, 2004, plaintiff told Norman Ryan, Mr. Bauer's supervisor, about the accident and his pain. Mr. Ryan suggested plaintiff should go to Urgent Care. *Page 4 
5. Plaintiff was initially treated on May 10, 2004 at Doctors Urgent Care Center, with complaints of thoracic and lumbar spine pain. Urgent Care referred plaintiff to Raleigh Orthopaedic Clinic.
6. On June 10, 2004, plaintiff began treating with Dr. Cara Siegel, of Raleigh Orthopaedic Clinic, with complaints of mid-thoracic back pain. Plaintiff was diagnosed with rhomboid strain and truncal myalgia. Dr. Siegel released plaintiff to return to work without restrictions but referred him to physical therapy which continued over the next few months.
7. On his first physical therapy appointment on June 16, 2004, plaintiff complained of upper extremity numbness and tingling. He continued to experience hand and arm numbness and described these symptoms to Betty Riddle, his medical case manager, in September, October, and November 2004. Plaintiff complained of neck pain to his medical case manager on repeated occasions from November 2004 through March 2005.
8. On December 30, 2004, plaintiff, through counsel, filed a Form 18 alleging an April 30, 2004 injury to his spine, right foot, right arm, and left arm.
9. On April 26, 2005, defendants accepted plaintiff's claim by filing a Form 60, accepting injuries to the lumbar spine only and denying compensability of any alleged cervical spine and bilateral arm and feet claims.
10. On October 28, 2004 an MRI of plaintiff's lumbar spine showed a disc bulge and herniation. On December 14, 2004, plaintiff was treated by Dr. James Fulghum of Carolina Back Institute with chief complaints of mid to low thoracic pain with pain in other areas involving the neck, lower back, right leg, and right foot. Dr. Fulghum referred plaintiff to Dr. Catherine Duncan, a specialist in pain management, for further evaluation. *Page 5 
11. On December 17, 2004, plaintiff was seen by Dr. Duncan with primary complaints of thoracic and low back pain. Plaintiff underwent a series of prolotherapy injections that were administered on January 5, January 19, February 2, and February 16, 2005. Although Dr. Duncan did not take plaintiff out of work following these injections, she indicated that the more active the patient, the more the pain at the injection sites would limit his abilities. Dr. Duncan prescribed narcotic pain medications for plaintiff's use after the injections. After the first injections, plaintiff experienced pain and discomfort and was unable to return to work for two to three days. With subsequent injections, he was able to return to work more quickly but continued to miss work for days due to the pain.
12. Plaintiff's testimony and defendant-employer's timesheets show that he missed 15 days prior to his last full day at work as a result of his injuries, his medical appointments or his prolotherapy and resulting pain. Plaintiff missed the following days of work: August 23, 2004; August 27 and 28, 2004; September 27 and 28, 2004; November 15, 2004; December 14, 2004; December 17, 2004; January 5, 6 and 7, 2005; January 19, 2005; February 2, 2005; February 11, 2005; and February 14, 2005.
13. On March 10, 2005, Dr. Duncan released plaintiff at maximum medical improvement, with no restrictions for the thoracic or lumbar spine, and no permanent partial impairment. The form plaintiff completed for the visit to Dr. Duncan makes reference to neck pain. Although Dr. Duncan testified at her deposition that she was aware of plaintiff's neck pain, she did not treat his neck because it was not part of Dr. Fulghum's referral and the insurance carrier had not authorized such treatment.
14. On February 21, 2005, plaintiff reported to the assigned nurse case manager, Ms. Riddle, a February 19, 2005 onset of cervical pain and resulting pain and tingling in the left *Page 6 
hand, which began when plaintiff turned his head to speak to someone and experienced a pop in the left side of his neck. Plaintiff further stated he was not able to work due to the resulting pain and tingling in the left hand. Ms. Riddle acknowledged in her deposition that this was not the first time plaintiff complained to her of neck pain. Ms. Riddle recommended that defendant authorize further evaluation for the ongoing cervical complaints, but the carrier refused.
15. Plaintiff was last able to work a full day on February 15, 2005. His last prolotherapy shots were on February 16, 2005. Plaintiff saw his family doctor at Knightdale Primary Care on February 22, 2005, with complaints of neck pain. Plaintiff was diagnosed as having a herniated cervical disc and taken out of work until he could see a neurosurgeon.
16. On March 7, 2005, plaintiff began treating with Dr. Timothy Garner of Capitol Neurosurgery. After review of the cervical MRI, Dr. Garner diagnosed plaintiff with a soft disc herniation at C6-7 on the left. Beginning March 7, 2005, plaintiff was written out of work by Dr. Garner due to his cervical disc herniation. Plaintiff treated conservatively with Dr. Garner and was found to be at maximum medical improvement and released to return to work without restrictions on May 23, 2005. Dr. Garner assigned plaintiff a five percent permanent partial disability rating to his neck.
17. Although defendant-employer had a job available for plaintiff as of his release to work on May 23, 2005, by the time plaintiff sought to return to his job on June 24, 2005, defendant-employer no longer had any work available for plaintiff. Thereafter, plaintiff found work two weeks later on July 8, 2005 with Carolina Wiring Service. As of the Deputy Commissioner's hearing, plaintiff continued to be employed at wages equal to or greater than his pre-injury wages. *Page 7 
18. Plaintiff gave a history to Dr. Garner that his neck symptoms began when he fell from a ladder through the ceiling on April 30, 2004. Dr. Garner found no other possible causes of the herniated disc. Based on Dr. Garner's 20 years of experience, the MRI findings, and his examination and treatment of plaintiff, it was Dr. Garner's expert opinion to a reasonable degree of medical certainty and the Commission finds that the fall from the ladder was a likely cause of plaintiff's herniated disc at C6-7.
19. There is no evidence of record or in Dr. Garner's deposition that when he expressed his causation opinion he was unaware of plaintiff's February 19, 2005 incident where plaintiff turned his head and experienced a pop in his neck.
20. As the result of the admittedly compensable injury by accident on April 30, 2004, plaintiff sustained injuries to his cervical, thoracic and lumbar spine and was temporarily totally disabled from any employment from February 15, 2005 until May 23, 2005, when he was released to return to work with no restrictions. In addition, plaintiff was disabled and missed the following days while he continued to work for defendant-employer: August 23, 2004; August 27 and 28, 2004; September 27 and 28, 2004; November 15, 2004; December 14, 2004; December 17, 2004; January 5, 6 and 7, 2005; January 19, 2005; February 2, 2005; February 11, 2005; and February 14, 2005.
 * * * * * * * * * * *
In accordance with the directives of the North Carolina Court of Appeals, and based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On April 30, 2004, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. *Page 8 
Stat. § 97-2(6). As the result of the compensable injury by accident, plaintiff sustained injuries to his cervical, thoracic and lumbar spine.
2. As the result of his compensable injury by accident, plaintiff was temporarily totally disabled from any employment and is entitled to payment by defendant of temporary total disability compensation at the rate of $495.72 per week from February 15, 2005 until May 23, 2005. Plaintiff is also entitled to payment of compensation for the following days missed from work for medical treatment: August 23, 2004; August 27 and 28, 2004; September 27 and 28, 2004; November 15, 2004; December 14, 2004; December 17, 2004; January 5, 6 and 7, 2005; January 19, 2005; February 2, 2005; February 11, 2005; and February 14, 2005. N.C. Gen. Stat. § 97-29.
3. As the result of his compensable injury by accident, plaintiff sustained a five percent permanent functional impairment to his cervical spine for which he is entitled to permanent partial disability compensation at the rate of $495.72 per week for 15 weeks. N.C. Gen. Stat. § 97-31(23).
4. As the result of his compensable injury by accident, plaintiff is entitled to have defendant pay for all related medical expenses incurred or to be incurred. The approved medical expenses include treatment by Dr. Garner and Knightdale Primary Care. N.C. Gen. Stat. §§ 97-25,97-25.1.
 * * * * * * * * * * *
In accordance with the directives of the Court of Appeals and based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following: *Page 9 
 AWARD
1. Subject to the attorney's fee approved below, defendant shall pay plaintiff temporary total disability compensation at the rate of $495.72 per week from February 15, 2005 until May 23, 2005 and for the following days plaintiff missed due to his medical treatment: August 23, 2004; August 27 and 28, 2004; September 27 and 28, 2004; November 15, 2004; December 14, 2004; December 17, 2004; January 5, 6 and 7, 2005; January 19, 2005; February 2, 2005; February 11, 2005; and February 14, 2005.
2. Defendant shall pay plaintiff permanent partial disability compensation for the five percent permanent functional impairment to his cervical spine at the rate of $495.72 per week for 15 weeks. This amount shall be paid in a lump sum, subject to the attorney's fee awarded below.
3. Defendant shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his compensable injury by accident. The approved medical expenses include treatment by Dr. Garner and Knightdale Primary Care.
4. A reasonable attorney's fee of 25% of the compensation awarded in paragraphs 1 and 2 of this Award is approved for plaintiff's counsel. This fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff.
5. Defendant shall pay the costs.
This 24th day of February, 2009.
S/_______________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 10 
CONCURRING:
 S/_______________________________ STACI MEYER COMMISSIONER
 S/_______________________________ DIANNE C. SELLERS COMMISSIONER